**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | No. CV05-618 PCT-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| GLC Restaurants, Inc. d/b/a McDonald's Restaurant, an Arizona corporation, | |
| Defendant. | |

The parties have filed a number of motions in anticipation of trial. This order will address those motions.

1. Plaintiff and Plaintiffs/Intervenors have filed Motion in Limine #1. Dkt. #227. The motion seeks to preclude evidence concerning the financial condition of Rick and Cindy Mayotte, the parents of Tiara Brazle. The motion argues that such evidence is irrelevant and unduly prejudicial. The Court cannot assess the relevancy and potential prejudice of the evidence at this point. These matters must be decided at trial in the context of the evidence and arguments of the parties. Because the Court may rule this evidence inadmissible, Defendants should not mention it to the jury during opening statements. The motion (Dkt #227) is **denied**.

2. Plaintiff and Plaintiffs/Intervenors have filed Motion in Limine #2. Dkt. #229. The motion seeks to exclude evidence of Jessica Tubandt's felony convictions for possession of marijuana pipes and use of marijuana. Defendants argue that the evidence is relevant to

Ms. Tubandt's failure to mitigate damages and therefore relevant to any claim for back pay. Back pay is an equitable remedy to be awarded by the Court. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000). The Court will seek an advisory verdict from the jury on the question of back pay, but ultimately will determine what back pay, if any, should be awarded against Defendants. Because the Court concludes that evidence of Ms. Tubandt's felony convictions would be unfairly prejudicial before the jury and would outweigh the relevance of the convictions on the advisory verdict concerning back pay, the Court will grant the motion under Federal Rule of Evidence 403. If the jury renders an advisory verdict in favor of Ms. Tubandt on the question of back pay, Defendants will be able to argue to the Court that any award of back pay should be reduced or eliminated on the basis of Ms. Tubandt's failure to mitigate damages in light of her felony convictions. For purposes of the jury trial, however, the motion in limine (Dkt. #229) is **granted**.

3. Plaintiff and Plaintiffs/Intervenors have filed Motion in Limine No. 3. Dkt. #230. The motion seeks to exclude evidence of drug and alcohol use by the claimants and class members. The motion argues that such evidence is irrelevant and highly prejudicial. Defendants respond by arguing that evidence of drug and alcohol use is relevant to the claimants' ability to recollect events at issue in this case and to their claim for emotional distress damages. The Court concludes that the marginal relevance of the evidence on these issues is substantially outweighed by the danger of unfair prejudice and therefore will grant the motion under Rule 403. Although it is true that drug and alcohol may in some cases affect an individual's ability to perceive or recollect events, Defendants cite no evidence to suggest that it has had that effect in this case. Nor do Defendants cite any specific evidence to suggest that the claimants used drugs or alcohol while working at Defendants' establishment. In the absence of such specific evidence, the relevancy of general drug or alcohol use is marginal, and yet such evidence clearly could be unfairly prejudicial to the Plaintiffs' case. The motion (Dkt. #230) is **granted**.

4. Plaintiff and Plaintiffs/Intervenors have filed Motion in Limine #4. Dkt. #231. The motion seeks to exclude statements and actions of Rick Mayotte during the September

2002 GLC investigation of alleged discrimination against Tiara Brazle. Mr. Mayotte was Ms. Brazle's step-father. As stated above with respect to Motion in Limine #1, the Court cannot conclude at this stage that Mr. Mayotte's actions and statements during the investigation are irrelevant, nor can the Court determine at this stage whether evidence about such actions and statements would be unduly prejudicial. As a result, the motion will be denied. Because the Court may exclude this evidence during trial, Defendants should not mention it during their opening statements. The motion (Dkt. #231) is **denied**.

5.   Plaintiff and Plaintiffs/Intervenors have filed Motion in Limine #5. Dkt. #232. The motion seeks to exclude evidence of financial or living conditions of the claimants and their families. Defendants respond by stating that they will seek to introduce such evidence only with respect to Tiara Brazle and the actions of her step-father, Rick Mayotte. The Court accordingly will grant the motion with respect to all claimants other than Tiara Brazle. For the reasons stated above, the Court cannot determine at this stage that the evidence concerning Ms. Brazle's and Mr. Mayotte's financial or living conditions is irrelevant or would be unduly prejudicial. As a result, the Court will deny the motion with respect to such evidence. Because the evidence may be excluded during trial, it should not be mentioned by Defendants during opening statements. The motion (Dkt. #232) is **granted in part and denied in part** as set forth above.

6.   Plaintiff and Plaintiffs/Intervenors have filed a motion in limine to exclude reference to evidence subject to Federal Rule of Evidence 412. Dkt. #325. The motion seeks to exclude evidence of claimants' alleged sexual behavior outside the workplace and alleged sexual comments in the workplace. Defendant GLC responds by stating that it does not intend to introduce evidence of claimants' sexual behavior prior to or outside of their employment at GLC. The response of Defendants Ehresman is less precise, but seems also to suggest that they seek to introduce evidence concerning claimants' statements in the workplace. The Court concludes that the claimants' sexual activities outside the workplace are largely irrelevant and that their presentation to the jury would be highly prejudicial. Because Defendants cannot show that the probative value of such evidence would

1  substantially outweigh the danger of unfair prejudice, the evidence must be excluded under
2  Rule 412(b)(2).

3        The Court concludes, however, that statements of a sexual nature made by claimants
4  in the presence of any alleged harassers are relevant and not unfairly prejudicial.  Such
5  statements go directly to Plaintiffs' claim that the actions of the harassers were unwelcome,
6  created an abusive environment, and caused claimants to suffer emotional and mental pain.
7  The Court concludes that the probative value of such evidence substantially outweighs the
8  danger of unfair prejudice to any party and that the evidence is therefore admissible.  Thus,
9  to the extent Defendants possess evidence that any of the claimants made statements of a
10 sexual nature in the presence of Mr. Ehresman or other alleged harassers, the Court will deny
11 the motion in limine.

12       The Court cannot determine at this stage whether statements of a sexual nature made
13 by the claimants in the workplace but not in the presence of the alleged harassers should be
14 excluded.  The Court must evaluate the probative value and potential prejudicial effect of
15 such statements during trial.  As a result, the Court will deny the motion with respect to such
16 statements as well.  Because the Court may ultimately exclude evidence of statements made
17 in the workplace outside the hearing of an alleged harasser, however, Defendants should not
18 mention such evidence during their opening statements.  The motion in limine (Dkt. #325)
19 is **granted in part and denied in part** as set forth above.[1]

20       7.     Defendant GLC has filed motions in limine to bar testimony and evidence
21 regarding alleged misconduct by Juan Cruz and Joe Hubbard.  Dkt. ##240, 241.  GLC argues
22 that the allegations against these individuals by class member Candace Jackson-Hannah were
23 never included in an EEOC charge or any complaint filed in this case, and therefore may not

---

[1] The parties' requested oral argument on this motion.  The Court concludes that such argument is not necessary because the parties' briefs fully address the issues relevant to this motion.  In order to comply with Rule 412(c)(2), however, the Court will permit the parties to provide any additional arguments or comments they deem relevant to this motion during the Final Pretrial Conference on January 5, 2007.

- 4 -

1 be admitted at trial. The Court does not agree. Although specific allegations against Cruz
2 and Hubbard are not set forth in the EEOC's complaint, the complaint does allege that GLC
3 discriminated against "a class of individuals . . . by subjecting them to sexual harassment and
4 creating a sexually hostile work environment." Dkt. #241, Ex. E at 1. The complaint further
5 alleges that these violations "include, but are not limited to," actions by Steve Ehresman. *Id*.
6 at 11. The complaint, which is judged by a notice pleading standard, thus placed GLC on
7 notice that the EEOC was claiming creation of a sexually hostile work environment, and that
8 the actions giving rise to this environment were not limited to those of Mr. Ehresman. The
9 Court also concludes that the EEOC's evidence is not limited by the allegations set forth in
10 the charges filed by non-class members. GLC cites no authority for the proposition that a
11 class complaint by the EEOC may include only those charges asserted by non-class members.
12 Moreover, the Court concludes that the allegations against Cruz and Hubbard are "like or
13 reasonably related to the allegations contained in the EEOC charge" of the non-class
14 members. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citations and quotations
15 omitted). The Court also concludes that the original EEOC investigation likely would have
16 encompassed sexual harassment by individuals other than Mr. Ehresman. *Id*. For these
17 reasons, GLC's motions (Dkt. ##240, 241) are **denied**.

18    8.  Defendant GLC has filed motions in limine seeking to preclude allegations of
19 sexual harassment against Steve Ehresman by Holly Procunier and Julie Downing.
20 Dkt. ##242, 243. GLC argues that such evidence will not be relevant unless and until
21 Plaintiffs establish sexual harassment on the part of GLC. The Court does not agree.
22 Although harassing conduct by Mr. Ehresman against individuals other than the claimants
23 and at locations other than the Cordes Junction store are not relevant to the question of
24 whether the claimants perceive the environment at Cordes Junction to be sexually hostile,
25 such evidence is relevant to a number of other issues in this case. Past complaints against
26 Mr. Ehresman, and GLC's apparent conclusion that those complaints established sexual
27 harassment on his part, are relevant to GLC's defense that Mr. Ehresman's conduct toward
28 the claimants in this case was not harassment, but instead was mere teasing. Such evidence

is also relevant to GLC's claim that it implemented an anti-harassment policy in good faith. The evidence is also relevant to the knowledge and state of mind of Mr. Ehresman and GLC, and whether these Defendants possess the state of mind necessary for punitive damages. Because the Court cannot conclude that the evidence of sexual harassment against Ms. Procunier and Ms. Downing is irrelevant, nor that the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice, GLC's motions (Dkt. ##242, 243) are **denied**.[2]

9. Defendant GLC has filed a motion in limine to bar testimony from Charlene Hannah and Mary Hellman regarding alleged sexual harassment by Steve Ehresman. Dkt. ##244, 245.  GLC argues that this testimony is not relevant because it will not establish whether any of the remaining claimants perceived Mr. Ehresman's actions to be harassment. While it is true that the testimony of Ms. Hannah and Ms. Hellman may not be used to prove that other claimants perceived the environment at GLC to be sexually hostile, the evidence is, as noted above, relevant on a number of other issues.  These issues include GLC's assertion of the *Faragher/Ellerth* affirmative defense, Defendants' liability for punitive damages, and Defendants' assertion that Mr. Ehresman's conduct constituted mere teasing. GLC's motions (Dkt. ##244, 245) are **denied**.[3]

10. Defendant GLC has filed a motion in limine to bar admission of a tape recording and transcript of an investigation allegedly conducted at GLC's Camp Verde store. Dkt. #246.  The investigation allegedly concerned Holly Procunier's allegations of misconduct against Mr. Ehresman.  GLC argues that the tape and transcript should be excluded because the tape cannot be authenticated under Federal Rule of Evidence 901 and

---

[2] Because this evidence will not be admitted for purposes of showing that the claimants perceived the environment at GLC to be sexually hostile, a limiting instruction may be appropriate. If Defendants desire such a limiting instruction, they should propose one to the Court before the testimony of Ms. Procunier and Ms. Downing.

[3] As noted in the preceding footnote, Defendants may propose limiting instructions before the testimony of Ms. Hannah and Ms. Hellman.

1 the transcript constitutes inadmissible hearsay. GLC argues that the tape could have been authenticated during the discovery process, but was not. Plaintiffs respond by asserting that the tape will be authenticated at trial by witnesses Harges, Procunier, and Ehresman. They further assert that the tape and transcript are admissible under a number of exceptions to the hearsay rule. The Court cannot conclude at this stage that Plaintiffs will be unable to authenticate the tape and transcript at trial. And because Defendant GLC has not provided the Court with a copy of the tape or transcript, the Court cannot determine whether it is inadmissible hearsay. GLC's motion (Dkt. #246) is therefore **denied**.[4]

11. Defendant GLC has filed a motion in limine to bar testimony from Plaintiffs' expert C. Brady Wilson, Ph.D. Dkt. #247. GLC's motion incorporates briefing previously submitted to the Court. *Id.* Plaintiffs oppose the motion, arguing that Dr. Wilson's testimony is admissible under Rule 702 of the Federal Rules of Evidence. Dkt. #302.

Dr. Wilson is a trained psychologist. His expert report provides general observations on a number of issues arguably relevant to this case. Dkt. #136, Ex. A. For example, he opines that sexually harassing predators tend to minimize their behavior and marginalize their victims and the victims' complaints; that perpetrators define the propriety of their behavior as a function of the victims' response; that sexual harassment cases tend to be addressed only in the context of the alleged perpetrator's acts, when in fact the entire "sexualized work environment" must be considered; that the record in this case "reveals that the pervasive and persistent conduct of the male supervisor (Mr. Ehresman) continued to be tolerated by his employer despite a well-defined sexual harassment history"; that a corporate sexual harassment policy can be effective only if it includes four specific components; that an employer's assurances that sexual harassment will not be tolerated do nothing to

---

[4] Plaintiffs assert that the tape may be authenticated by playing portions of it outside of the hearing of the jury. The Court will set strict time limits for the trial at the Final Pretrial Conference. Plaintiffs are cautioned that any time spent authenticating the tape outside the hearing of the jury will be charged against their allotted trial time. If this presents a problem for Plaintiffs, the problem could have been avoided by authentication of the tape during discovery.

1 effectively address the issue or make the environment safe for employees; that cultural
2 taboos, corporate inhibitions to reporting, and concerns about retaliation tend to reduce
3 reports of sexual harassment; that groups of women in a sexually harassing environment may
4 tend to splinter into different classes, some of whom acquiesce and some of whom resist; that
5 harassed individuals often delay their complaints of harassment; that victims tend to recall
6 specific events in a sequential nature, later recalling additional events; that victims feel fear
7 regardless of whether an actual physical assault or rape is threatened; that strain caused by
8 sexual harassment can result in significant mental problems and a serious disruption to the
9 victim's sense of safety and security; that the impact of harassing behaviors is more severe
10 when perceived to be permitted or sponsored by the corporation; and that a number of
11 assumptions often drawn in sexual harassment cases are incorrect. *Id.* at ¶¶ 9-23.[5]

12       Rule 702 provides that a witness qualified as an expert may testify on relevant issues
13 "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product
14 of reliable principles and methods, and (3) the witness has applied the principles and methods
15 reliably to the facts of the case." Plaintiffs assert that Dr. Wilson's testimony is based on
16 reliable, peer-reviewed research. Dr. Wilson does cite a number of sources in the footnotes
17 of his report, but fails to identify specific portions of these sources that support his general
18 opinions. Because GLC has failed to attack any of these sources or their reliability, however,
19 the Court will assume that Dr. Wilson's general views are the product of reliable principles
20 and methods.

21       The Court cannot conclude, however, that Dr. Wilson's opinions are based on
22 sufficient facts or data concerning this case, nor that he has applied the principles or methods

---

24       [5]In response to GLC's motion, Plaintiffs assert that they will not present testimony
25 from Dr. Wilson to support their claim for damages. Thus, even though Dr. Wilson
specifically opines on the mental and emotional effects of harassment, Plaintiffs suggest that
26 this evidence will not be presented to support the claimants' allegations of mental and
emotional injury in this case. Instead, Plaintiffs assert that Dr. Wilson's opinions will assist
27 the trier of fact to understand how people behave in the context of a sexually harassing
28 environment. Dkt. #302 at 2.

reliably to the facts of this case. Dr. Wilson testified in deposition that his opinions *do not* concern the facts of this case: "I've been very clear[.] [N]ot only am I not offering opinions about Mr. Ehresman or these individuals; I'm precluded from doing it because I haven't conducted my own examination." Dkt. #136, Ex. B at 153. Dr. Wilson explained that he is testifying only about a generalized class of individuals, not about the claimants in this case. *Id.* at 12. *See also id.* at 10-12, 152-153, 171, 188-189, 227, 238.

Although there may be cases where generalized expert testimony is relevant, such as basic explanations of the laws of thermodynamics,[6] the Court cannot conclude that Dr. Wilson's testimony is of that kind. Dr. Wilson presents rather specific conclusions that, if admitted, would lead the jury to reach specific conclusions about the facts in this case: that Mr. Ehresman is a predator, that as a predator he tended to minimize the claimants' allegations, that the claimants were understandably reluctant to complain about his behavior, that the claimants suffered fear and mental stress as a result of his conduct, that the claimants fear was made worse by GLC's apparent acquiescence in his conduct, and so forth. While expert testimony on such matters might be entirely appropriate if properly presented under Rule 702, it would have to be founded "upon sufficient facts or data" and applied "reliably to the facts of the case." Fed. R. Ev. 702 (1), (3). Dr. Wilson admits that the has not done so. His opinions are not based on the conduct of Mr. Ehresman, the actions of GLC, or the reactions of the claimants. He instead attempts to provide generalized observations for the jury to apply to the specific facts in this case, but without having considered those facts himself. Such testimony does not satisfy the requirements of Rule 702. GLC's motion (Dkt. #247) is therefore **granted**.[7]

---

[6]*See* Fed. R. Ev. 702 Advisory Committee Notes (2000 Amendments).

[7]Plaintiffs contend that Dr. Wilson's testimony is akin to expert testimony on battered women's syndrome as accepted by the Ninth Circuit in *Dillard v. Roe*, 244 F.3d 758 (9th Cir. 2001). But the Ninth Circuit in *Roe* did not generally approve the admissibility of such testimony. *Roe* merely held that the admission of such testimony in the petitioner's criminal trial did not violate his due process rights and thereby entitle him to habeas corpus relief. *Id.*

12.     Defendant GLC has filed a motion in limine to bar the testimony of Plaintiffs' expert witness Jan Salisbury. Dkt. #248. GLC argues that Ms. Salisbury's testimony is misleading because she applies standards established in her own handbook, not requirements of the law. This argument goes to the weight, not the admissibility, of the testimony, and GLC is fully capable of making this point during cross-examination. Moreover, GLC has identified its own expert on the requirements of an effective anti-discrimination policy.

GLC next argues that Ms. Salisbury's opinion is unreliable because she cites no source other than her own book. Rule 702 makes clear, however, that experts may be qualified by knowledge, skill, experience, training, or education. Ms. Salisbury's resume suggests that she is qualified by knowledge, experience, training, and education to opine on anti-discrimination policies.

GLC notes that Ms. Salisbury criticizes GLC for not preparing a written report of its investigation at the Cordes Junction store, and yet her book states that oral reports may be sufficient. GLC will be fully capable of making this point on cross-examination.

Finally, GLC argues that Ms. Salisbury has failed to base her opinion on reliable pre-litigation research. GLC notes that a study conducted by the University of Illinois is only preliminary and argues that the study was based in part on a discredited study tool. Again, GLC will be fully capable of making these points on cross-examination.

The Court concludes that Ms. Salisbury has reasonable qualifications to opine on the adequacy of GLC's anti-discrimination policy and has rendered relevant testimony. The testimony is based on sufficient facts, appears to be based on reliable principles and methods developed by Ms. Salisbury during her years of work in this field, and is applied to the specific facts of this case. The Court accordingly concludes that the testimony is generally admissible under Rule 702. GLC may cross-examine Ms. Salisbury and present its own expert to oppose her testimony. GLC's motion (Dkt. #248) is **denied**.

---

at 766-67.

- 10 -

13.     Defendant GLC has filed a motion in limine to bar testimony and evidence regarding allegations of retaliation. Dkt. #249. GLC correctly notes that there is no retaliation claim in this case, and asks the Court to bar any evidence of retaliatory actions. GLC fails to specify the evidence to which its motion is addressed. The motion will be denied. Although it is true that Plaintiffs have not asserted a retaliation claim in this case, alleged acts of retaliation may be relevant to the jury's evaluation of Defendant's *Faragher/Allerth* affirmative defense and Plaintiff's claim for punitive damages. Because the Court cannot determine at this stage that such evidence would be irrelevant to these or other issues, and cannot at this stage evaluate the prejudicial effect of admitting such evidence, GLC's motion (Dkt. #249) is **denied.**

14.     Defendant GLC has filed a motion in limine to bar testimony and evidence regarding swing clubs. Dkt. #250. The Court concludes that evidence concerning Mr. Ehresman's alleged involvement in swing clubs is irrelevant and inadmissible under Rules 401, 402, and 403. The motion will be granted insofar as it concerns evidence of his participation in such clubs. To the extent Mr. Ehresman discussed his involvement in such clubs while at work, however, his discussions may be relevant to issues in this case. Such comments would particularly be relevant if made to claimants. The Court cannot determine at this stage whether comments made in the workplace to non-claimants would be relevant or unduly prejudicial. As a result, GLC's motion concerning statements in the workplace about swing clubs will be denied. Because the Court may ultimately exclude this evidence, Plaintiffs should not mention it during opening statements. GLC's motion (Dkt. #250) is **granted in part and denied in part** as set forth above.

15.     Defendant GLC has filed a motion in limine to bar testimony and evidence regarding subsequent remedial measures. Dkt. #251. GLC argues that modifications made to its sexual harassment policies in 2006 cannot be admitted in evidence under Rule 407. Plaintiffs, in a somewhat confusing response, do not address the 2006 modifications to GLC's policies. Rather, Plaintiffs appear to discuss GLC's actions in response to the claimants' complaints, arguing that such responses are highly relevant to the

- 11 -

*Faragher/Allerth* defense and punitive damages. The Court cannot determine precisely what evidence is at issue in this motion. Although it is true that GLC's responses to the claimants' complaints are relevant to the *Faragher/Ellerth* defense and perhaps to punitive damages, the Court cannot determine whether the 2006 modifications (which neither party explains) are likewise relevant. The Ninth Circuit has noted that the admission of post-discrimination measures by a Defendant is within the discretion of the district court. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 804 (9th Cir. 2001). If the 2006 modifications were remedial measures seeking to improve GLC's policies, and not specific responses to the claimants' complaints, the Court will be inclined to exclude evidence of such modifications under Rule 407. Because the parties' memoranda do not discuss the specific evidence at issue, however, the Court cannot decide the issue at this point. The question will be decided during trial. Defendants' motion (Dkt. #251) is **denied**.

16.     Defendant GLC has filed a motion in limine to exclude evidence relating to settlement negotiations, offers to compromise, and insurance. Dkt. #252. Plaintiffs do not oppose the granting of this motion, but note that all parties should be prevented from inquiring into these subjects during direct and cross-examination. The Court agrees. GLC's motion (Dkt. #252) is **granted**.

17.     Defendant GLC has filed a motion in limine to bar testimony concerning GLC's net worth. Dkt. #253. GLC argues that evidence of its net worth is irrelevant, even on the question of punitive damages. GLC cites *State Farm Mutual Ins. Co. v. Campbell*, 538 U.S. 408 (2003), for the proposition that wealth may not be considered in assessing punitive damages. *Campbell* does not so hold. The Supreme Court merely stated in *Campbell* that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id*. at 427. The Supreme Court specifically cited its previous decision in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and Justice Breyer's concurring opinion in that case, which noted that consideration of a defendant's wealth is neither unlawful nor inappropriate. *Campbell*, 538 U.S. at 527-28. The Court cannot

1 conclude from this discussion that the wealth of a defendant is no longer relevant on the issue
2 of punitive damages. GLC's motion (Dkt. #253) is **denied**.

3       18. Defendant GLC has filed a motion in limine regarding Greg Cook's net worth.
4 Dkt. #254. Plaintiffs agree that evidence of Mr. Cook's net worth is inadmissible.
5 Dkt. #290. GLC's motion (Dkt. #254) is **granted**.

6       19. Defendant GLC has filed a motion in limine to preclude evidence or remarks
7 concerning Seyfarth Shaw LLP or its attorneys. Dkt. #255. Plaintiffs do not oppose the
8 granting of this motion. Dkt. #291. GLC's motion (Dkt. #255) is **granted**.

9       20. Defendant GLC has filed a motion in limine to bar testimony and evidence
10 regarding the location or status of Mr. Ehresman's personnel file. Dkt. #256. The Court will
11 deny the motion. The absence of Mr. Ehresman's file, which arguably contained documents
12 relevant to the issues in this case, is relevant for the jury's consideration. Defendants will
13 be able to present testimony concerning the reasons for the file's non-existence. The
14 significance of the file's absence will be for the jury to decide. Whether the Court will give
15 a spoliation instruction is a separate issue to be decided when jury instructions are settled.
16 GLC's motion (Dkt. #256) is **denied**.

17       21. Defendant GLC has filed a motion in limine seeking to exclude evidence
18 concerning the equitable remedies of front pay and back pay. Dkt. #257. As noted above,
19 the Court will seek an advisory verdict from the jury on these issues. Fed. R. Civ. P. 39(c).
20 Because evidence concerning front and back pay will be relevant to this advisory verdict, and
21 will not be unfairly prejudicial to Defendants, GLC's motion (Dkt. #257) is **denied**.

22       22. Defendant GLC has filed a motion in limine to exclude witness testimony not
23 supported by personal knowledge. Dkt. #258. This motion seeks to anticipate specific
24 testimony from specific witnesses without identifying the questions or answers that will be
25 at issue. The Court will rule on relevancy, foundation, and hearsay objections at trial. The
26 motion (Dkt. #258) is **denied**.

27       23. Defendant GLC has filed a motion in limine to exclude evidence and testimony
28 regarding class members' lack of medical insurance. Dkt. #259. Plaintiffs do not oppose the

motion. No party should refer to the lack of medical insurance at trial. GLC's motion (Dkt. #259) is **granted**.

24. Defendant GLC has filed a motion in limine to exclude emotional distress damages caused by this litigation. Dkt. #260. Specifically, the motion suggests that Ms. Henry has had panic attacks and Ms. Tubandt has had a recurring dream as a result of the lawsuit. Both women, however, have attributed their problems to the conduct of Mr. Ehresman. The cause of the alleged panic attacks and bad dreams will be for the jury to decide. The Court cannot conclude that this litigation is the only possible cause of the panic attacks and recurrent dreams. GLC's motion (Dkt. #260) is **denied**.[8]

25. Defendant GLC has filed a motion in limine to exclude lay witness testimony regarding Amanda Henry's panic attacks. Dkt. #261. Whether Ms. Henry's mother and step-father can provide lay opinions admissible under Rule 701 is a question that must be decided at trial. The Court will rule on Defendants' objections when questions are asked of these witnesses. GLC's motion (Dkt. #261) is **denied**.

26. Defendant GLC has filed a motion in limine to exclude lay witness testimony regarding Plaintiff's emotional distress injuries. Dkt. #262. Again, the Court cannot rule on the admissibility of lay witness testimony at this stage of the proceeding. The Court must evaluate such testimony in the context of the trial, the foundation laid for particular opinions, and objections made to such opinions. Because such determinations accurately can be made only during trial, GLC's motion (Dkt. #262) is **denied**.

27. Defendant GLC has filed a motion in limine to sequester witnesses. Dkt. #263. Whether either party will invoke the provisions of Federal Rule of Evidence 615 is a matter that will be discussed at the Final Pretrial Conference. It is not an appropriate subject for a motion in limine. GLC's motion (Dkt. #263) is **denied**.

---

[8] GLC improperly cited an unpublished Ninth Circuit decision in its memorandum and Plaintiffs addressed the same case in their response. Both parties are advised to review Ninth Circuit rules before citing unpublished opinions.

- 14 -

28.     Defendant GLC has filed a motion in limine to bar testimony of the EEOC's custodian of records. Dkt. #264. Whether the custodian of records can render admissible testimony, and whether documents to be introduced into evidence on the basis of that testimony will be admissible, are matters that can only be decided in the context of the testimony and trial. GLC's motion (Dkt. #264) is **denied**.

29.     Defendant GLC has filed a motion in limine to bar testimony of Candace Jackson-Hannah. Dkt. #265. The motion argues that Ms. Jackson-Hannah has no knowledge of the conduct of Mr. Ehresman and therefore should not be permitted to testify concerning his conduct. The Court will rule on objections to Ms. Jackson-Hannah's testimony at trial. GLC's motion (Dkt. #265) is **denied**.

30.     Defendant GLC has filed a motion in limine to bar testimony and evidence regarding the ultimate issues for the jury. Dkt. #266. GLC seeks to preclude witnesses from providing opinions on whether conduct in this case constitutes sexual harassment. Whether a particular question or answer is objectionable under the Federal Rules of Evidence must be decided at trial. The Court cannot determine at this stage whether a particular witness' perception of discrimination is or is not admissible under the Rules of Evidence. GLC's motion (Dkt. #266) is **denied**.

31.     Defendants GLC and Ehresman have filed motions seeking to exclude evidence of calculable damages not disclosed under Federal Rule of Civil Procedure 26(a)(1)(C). Dkt. ##235, 267. In response, Plaintiffs assert that only claimant Tiara Brazle asserts a claim for back pay. Defendants' motion will thus be granted with respect to back pay evidence for any other claimant. With respect to Ms. Brazle, Plaintiffs do not assert that they disclosed a damages calculation as required by Rule 26(a)(1)(C). Plaintiffs argue that Defendants obtained various categories of financial information from Ms. Brazle during discovery, but they do not assert that they disclosed a "computation" of her damages as required by the rule.

When a party fails to make a disclosure required by Rule 26(a), the party may not subsequently introduce the required information at trial unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Plaintiffs do not argue that their

- 15 -

1 failure to disclose a computation of damages was substantially justified. Nor do they 2 specifically suggest it is harmless. As a general matter, disclosing a computation of damages 3 under Rule 26(a) is necessary for the opposing party to produce responding evidence, such 4 as an expert report. The Court cannot conclude that Plaintiffs' failure to disclose a 5 computation of damages for Ms. Brazle was harmless. Thus, pursuant to Rule 37(c)(1), 6 Plaintiffs will be prevented from presenting at trial any computation of damages or other 7 information required by Rule 26(a)(1)(C) with respect to Ms. Brazle. Defendants' motions 8 (Dkt. ##235, 267), are **granted**.

9     32. Plaintiff and Plaintiffs/Intervenors have filed a motion to exclude the expert 10 testimony and report of Ginger S. McRae. Dkt. #225. Plaintiffs argue that Ms. McRae will, 11 in effect, provide legal instructions to the jury. The Court does not agree. Ms. McRae's 12 report constitutes a detailed examination of the facts in this case as applied to guidance 13 provided by the EEOC. The Court will rule on specific objections at trial concerning 14 inappropriate legal opinions.

15     Plaintiffs further argue that the trier of fact will be capable of evaluating the totality 16 of the evidence on its own and that expert testimony on the reasonableness of Defendants' 17 conduct is not necessary. The Court does not agree. Expert testimony may be admitted to 18 assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Ev. 19 702. The reasonableness of Defendants' conduct is such a fact in issue. Indeed, Plaintiffs 20 have presented their own expert, Ms. Salisbury, on this issue.

21     Finally, Plaintiffs argue that Ms. McRae may not opine on the credibility of witnesses. 22 Ms. McRae's report constitutes her assessment of the facts, as does Ms. Salisbury's. The 23 Court agrees that an expert generally should not state an opinion on the credibility of a 24 witness, but it does not appear from her report that Ms. McRae intends to do so. Objections 25 will be addressed at trial.

26     The Court finds that Ms. McRae's opinions satisfy the requirements of Rule 702. The 27 motion to exclude her testimony (Dkt. #225) is **denied**.

28

- 16 -

33.     Defendants Steve and Shari Ehresman have filed a motion for a severed and separate trial of the state law claims against them. Dkt. #236. The motion will be denied. The state tort claims brought against the Ehresman Defendants substantially overlap the Title VII claims brought against GLC. Indeed, the Title VII claims are based primarily on the conduct of Mr. Ehresman. Separating the trials would result in substantial inefficiency, including the duplicative presentation of the testimony of numerous witnesses. Moreover, the Court concludes that careful control of the trial and appropriate instructions will avoid prejudicial confusion. The Court intends to impose strict time limits on all parties in this case, ensuring an efficient presentation of the evidence and preventing the unnecessary expenditure of time and resources. The motion (Dkt. #236) is **denied**.

34.     Defendant GLC has filed a motion to "trifurcate" the trial. Dkt. #268. The motion will be denied.

In this motion as in other motions, Defendants rely on a quotation from the Court's Order dated October 26, 2006. Dkt. #268 at 3-4. The Court's previous ruling, however, merely stated that allegations regarding Mr. Ehresman's harassment of Ms. Downing and Ms. Procunier may not be used to establish that other claimants believe they were subject to a hostile work environment (because none of the other claimants knew of the previous harassment of Ms. Downing and Ms. Procunier), but may be relevant in assessing GLC's liability. Specifically, such evidence might be relevant to the credibility of Defendants' claim that the environment was not hostile or that Defendants sought to implement an anti-discrimination policy in good faith. GLC cannot rely on the Court's previous statement as a basis for trifurcating the trial.

Moreover, as noted with respect to the preceding motion, careful management of this case will avoid prejudice to all parties. The trial will be conducted efficiently, the jury will be accurately instructed on the law, and limiting instructions will be provided where appropriate. If Defendants believe that particular limiting instructions are necessary to ensure a fair trial, they may propose such instructions. The Court does not conclude that

1  GLC's proposed three-way division of the trial is either necessary or warranted in this case.
2  GLC's motion (Dkt. #268) is **denied**.

3  35.   Plaintiffs have filed a motion to strike Defendants' expert Jesse Viner, M.D., or, alternatively, to obtain a Rule 104 evidentiary hearing. Dkt. #234. Dr. Viner opines on two general subjects: the reliability of opinions provided by Dr. Wilson and whether specific claimants have suffered "psychiatric damages." Dkt. #234, Ex. A. Because the Court has excluded Dr. Wilson's testimony, Dr. Viner's critique of that testimony is no longer relevant. The question to be decided, then, is whether Dr. Viner's opinion concerning the lack of claimants' "psychological damages" is admissible.

Plaintiffs contend that Dr. Viner's opinions are not admissible because he never conducted a personal examination of the claimants. They assert that his opinions based on review of the claimants' depositions are unreliable. In support of this argument, Plaintiffs discuss the specific requirements set forth in the *Daubert* case, including whether the scientific theory or technique can be tested, whether the theory or technique has been subject to peer review and publication, whether there is a known or potential error rate, and whether the theory or technique is generally accepted in the relevant scientific community. Dkt. #234 at 4. Plaintiffs also submit an affidavit from Dr. Wilson criticizing Dr. Viner's approach.

The Court is not persuaded by Plaintiffs' discussion of the *Daubert* factors. The factors relied on by Plaintiffs constitute a non-exclusive list of considerations in assessing the admissibility of expert testimony. *See* Fed. R. Ev. 702 Advisory Committee Notes (2000 Amendments). In this case, Dr. Viner purports to apply his education and years of clinical experience to an evaluation of the claimants' psychiatric condition. Dr. Viner clearly has expertise in this area. The question is whether he has applied that expertise reliably in this case and whether his opinions are relevant.

The Court concludes that it need not address the reliability issue because Dr. Viner's opinions are not relevant. Dr. Viner opines that none of the claimants have suffered "psychiatric damages." Dkt. #234, Ex. A. His expert report, which is required to set forth a detailed and complete statement of the testimony he will present during direct

- 18 -

examination,[9] does not define "psychiatric damages." Dr. Viner did concede in his deposition, however, that a claimant can experience emotional pain, mental anguish, and loss of enjoyment in life without suffering a diagnosable psychiatric disorder. Dkt. #234, Ex. C at 49-50.

Plaintiffs in this case will seek recovery of emotional pain, mental anguish, and loss of enjoyment of life, but, as the Court understands their evidence, will not claim to have suffered psychiatric damages. Plaintiffs have presented no expert testimony suggesting they suffered psychiatric damages and, so far as the Court is aware, were never diagnosed as suffering from such damages. Thus, Dr. Viner's testimony that they did not suffer such damages is irrelevant. Plaintiffs' motion to exclude Dr. Viner's opinions (Dkt. #234) is therefore **granted**.[10]

DATED this 4th day of January, 2007.

*Daniel G. Campbell*
———————————————————
David G. Campbell
United States District Judge

---

[9]Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee Notes (1993 Amendments).

[10]If the Court has misunderstood Plaintiffs' case and they do in fact intend to assert a claim for psychiatric damages, they shall so inform the Court at the final pretrial conference and the Court will address the reliability of Dr. Viner's opinions.

- 19 -